# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HANNA KIM,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**KOREAN AIR LINES CO., LTD,**<br>**DELTA AIR LINES, ABC COMPANIES**<br>**1–5, and JOHN DOES 1–5,**<br><br>　　Defendants. | Civ. No. 20-03636 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Hanna Kim alleges that she was burned by hot soup served on board a flight operated by Korean Air Lines and Delta Air Lines from New York to South Korea. The airlines move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (DE 9, 10.)[1] In response, Kim asks that the case be transferred to the United States District Court for the Eastern

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Notice = Notice of Removal (DE 1)

Compl. = Kim's Complaint (DE 1-1)

Korean Air Brf. = Korean Air's Brief in Support of its Motion to Dismiss (DE 9-1)

Hyunah Kim Decl. = Declaration of Hyunah Kim in Support of Korean Air's Motion to Dismiss (DE 9-2)

Jensen Decl. = Declaration of Steven R. Jensen in Support of Delta's Motion to Dismiss (DE 10-2)

Kim Opp. = Kim's Brief in Opposition to Defendants' Motions to Dismiss (DE 15)

Korean Air Reply = Korean Air's Reply Brief in Support of its Motion to Dismiss (DE 17)

District of New York ("EDNY"). For the following reasons, the motions (DE 9, 10) are **DENIED**, and the case is **TRANSFERRED** to EDNY.

I. **BACKGROUND**

In 2018, Kim, a New Jersey resident, travelled aboard non-stop Korean Air flight KE086 from John F. Kennedy International Airport ("JFK") in New York to Incheon International Airport in Seoul, South Korea. (Compl. ¶ 1; Jensen Decl. ¶ 3.) She purchased her ticket through the Delta website, presumably while in New Jersey. (Hyunah Kim Decl. ¶ 17(c).) She alleges that Korean Air and Delta are part of a "joint venture." (Compl. ¶ 2.) Indeed, Korean Air and Delta themselves have publicly touted their "partnership." Trebor Banstetter, "Delta and Korean Air to expand partnership," Delta, https://news.delta.com/delta-and-korean-air-expand-partnership (last visited Jan. 12, 2021). However, the airlines state that Korean Air exclusively operated the flight. (Jensen Decl. ¶ 5; Hyunah Kim Decl. ¶¶ 13–14.)

On the flight, attendants served Kim soup that burned her. (Compl. ¶¶ 9–12.) Neither the Complaint nor Defendants specify where in airspace this happened. Kim sued the airlines in the courts of New Jersey, her state of residence, alleging negligence, strict products liability, and breach of warranties. (*Id.* ¶¶ 1–26.) The airlines removed to this federal court, asserting diversity jurisdiction and federal-question jurisdiction under the Montreal Convention, which governs international air travel and carrier liability, *see* Convention for the Unification of Certain Rules for International Carriage by Air, ch. I, art. 1, § 1; art. 17, May 28, 1999, 1999 WL 33292734, at *16. (Notice at 2–5.)

The airlines move to dismiss for lack of personal jurisdiction. In support, Korean Air states that it (1) is organized under the laws of South Korea, (2) has its principal place of business there, (3) does not maintain any employees or property in New Jersey, and (4) does not operate flights out of New Jersey. (Hyunah Kim Decl. ¶¶ 4, 6, 9, 10, 12.) Delta states that it (1) is organized under the laws of Delaware, and (2) has its principal place of business in Georgia. (Jensen Decl. ¶ 6.) Both airlines are registered as nonresident

corporations in New Jersey. (*Id.* ¶ 7; Hyunah Kim Decl. ¶ 7.) Kim did not submit any evidence of her own but opposes dismissal and asks alternatively that the case be transferred to the EDNY (where JFK is located). (Kim Opp. at 1–2.)

## II.   STANDARD OF REVIEW

Once a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, the court must examine any evidence presented. *See Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings . . . . Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." (citation omitted)). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

## III.   DISCUSSION

The issue presented is whether the airlines are subject to personal jurisdiction in New Jersey, and if not, whether transfer is appropriate. A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. *See* Fed. R. Civ. P. 4(k)(1)(A). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Those requirements allow for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). I conclude that the airlines are not

subject to general or specific jurisdiction in New Jersey. (Sections A and B, respectively, *infra*.) Nonetheless, I conclude that the case should be transferred to EDNY. (Section C, *infra*.)

### A. General Jurisdiction

A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least where it is incorporated or has its principal place of business. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). *Daimler* left open whether general jurisdiction exists in a forum other than a corporation's place of incorporation or principal place of business. *See* 571 U.S. at 137. Still, courts suggest that "it is 'incredibly difficult to establish general jurisdiction . . . in a forum *other* than the place of incorporation or principal place of business.'" *Chavez*, 836 F.3d at 223 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

There is no general jurisdiction over either defendant. Korean Air is organized under the laws of Korea and has its principal place of business there. (Hyunah Kim Decl. ¶¶ 4, 6.) Delta is organized under the laws of Delaware and has its principal place of business in Georgia. (Jensen ¶ 6.) Thus, New Jersey is not the place of incorporation or principal place of business for either defendant. Nonetheless, Kim seems to put forward two other bases for general jurisdiction: (1) Korean Air and Delta are registered in New Jersey, and (2) the Montreal Convention grants jurisdiction wherever the passenger resides. (*See* Kim Opp. at 1.) Neither is persuasive.

#### 1. Registration

The airlines' New Jersey registrations do not confer general jurisdiction. I acknowledge that Judge Simandle has held that registration qualifies as consent to be sued in New Jersey, thus conferring general jurisdiction. *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 468 (D.N.J. 2015). Judge

4

Simandle relied on *Bane v. Netlink Inc.*, holding—prior to *Daimler*—that registering to do business in Pennsylvania subjects a defendant to jurisdiction there. 925 F.2d 637, 640 (3d Cir. 1991). But Judge Arleo has persuasively explained why, at least post-*Daimler*, registration does not confer jurisdiction, *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 179 (D.N.J. 2016), and other judges in this District adopt her reasoning, *e.g., Ferguson v. Aon Risk Servs. Co.*, Civ. No. 19-9303, 2020 WL 914702, at *5 (D.N.J. Feb. 26, 2020) (Wolfson, C.J.); *Horowitz v. AT&T Inc.*, Civ. No. 17-4827, 2018 WL 1942525, at *12 (D.N.J. Apr. 15, 2018) (Martinotti, J.).

I, too, agree with Judge Arleo. Without recapitulating her entire reasoning, I offer two key reasons for declining to follow *Otsuka* and *Bane*. First, they cannot be squared with *Daimler*. If business registration alone is sufficient to confer jurisdiction, then "*Daimler*'s limitation on the exercise of general jurisdiction to those situations where 'the corporation is essential[ly] at home' would be replaced by a single sweeping rule: registration equals general jurisdiction." *Display Works*, 182 F. Supp. 3d at 179. Second, *Daimler* aside, *Bane* is distinguishable because the Pennsylvania statute there explicitly provided that registration meant consent to jurisdiction, while the New Jersey statutes do no such thing. *Id.* at 174–78. For those reasons, the airlines' New Jersey registrations do not confer general jurisdiction.

### 2. The Montreal Convention

Next, Kim suggests that the Montreal Convention confers jurisdiction wherever a passenger resides. (*See* Kim Opp. at 1.) The Convention stipulates the circumstances under which an airline may be liable to passengers. "If an action for damages falls within one of the Convention's damages provisions, then the treaty provides the sole avenue for relief—that is, the Montreal Convention preempts all local claims that fall within its scope." *Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 27–28 (1st Cir. 2020).

This Complaint pleads only state-law claims, not claims under the Convention. I have previously explained that the Convention does not

completely preempt state-law claims, or require a court "to conclude that a state-law complaint is really a federal-law one." *DeJoseph v. Continental Airlines, Inc.*, 18 F. Supp. 3d 595, 604 (D.N.J. 2014). Complete preemption aside, the issue of whether the Convention has an ordinary preemptive effect on the claims here is not yet ripe. The application of ordinary preemption rules would occur in connection with a merits analysis. *See id.* As a result, it is premature to rely on the Convention, because there has been no opportunity to determine that the Convention, whatever it may say about personal jurisdiction, applies at all.

Regardless, however, the Convention does not confer personal jurisdiction in New Jersey. True, one provision states that "[i]n respect of damage resulting from the death or injury of a passenger, an action may be brought . . . in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air." 1999 WL 33292734, at *39. But courts "have consistently concluded that the Montreal Convention affords subject matter jurisdiction, not personal jurisdiction." *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 16-9791, 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018) (emphasis omitted); *see also, e.g.*, Ltr. Order at 2, *Davydov v. Scandinavian Airline Sys.*, Civ. No. 19-17628 (D.N.J. Oct. 5, 2020), DE 28 (collecting cases), *appeal docketed*, No. 20-3243 (3d Cir. Nov. 3, 2020); *Avalon Techs., Inc. v. EMO-Trans, Inc.*, No. 14-14731, 2015 WL 1952287, at *5 (E.D. Mich. Apr. 29, 2015) (The Convention "confers jurisdiction on the courts of a nation-state, rather than a particular court within that nation-state."). Accordingly, the Convention, of its own force, does not confer jurisdiction here.

### B. Specific Jurisdiction

A court has specific jurisdiction "when the cause of action arises from the defendant's forum related activities." *Chavez*, 836 F.3d at 223 (citation omitted). Kim "must establish with reasonable particularity three elements.

6

First, the defendant must have purposefully directed its activities at the forum. Second, the plaintiff's claims must arise out of or relate to the defendant's activities. And third, exercising personal jurisdiction must not offend traditional notions of fair play and substantial justice." *Danziger*, 948 F.3d at 129–30 (quotation marks, alterations, and citations omitted). The first two elements are often discussed in tandem, as I will do here, because it is not enough for a defendant to have general contacts with a state—the contacts must relate to the claim. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102–03 (3d Cir. 2009); *see also Kyko Global, Inc. v. Bhongir*, 807 F. App'x 148, 152 (3d Cir. 2020) (defendant not subject to personal jurisdiction in Pennsylvania, even though he made trips there, when the suit alleged fraudulent conduct that did not occur on those trips).

For specific jurisdiction in New Jersey, Kim suggests only one basis: The airlines sold her a ticket, which she purchased online from her home state of New Jersey. (Kim Opp. at 1.) Assuming *arguendo* that Korean Air and Delta jointly sold her the ticket, the purchase does not create jurisdiction over either of them in New Jersey.

At the outset, the Delta website does not qualify as a sufficient contact with New Jersey. "[T]he mere operation of a commercially interactive web site" does not confer jurisdiction wherever that website may be accessed. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* There is no such evidence here. Instead, it seems that the Delta website is a general website that is available to anyone, anywhere. Kim has presented no evidence that the website targets New Jersey consumers.

Further, the ticket purchase cannot be the sole jurisdictional hook to New Jersey. Specific jurisdiction "focuses on the relationship among the

7

defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citation omitted). The "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Accordingly, "the plaintiff cannot be the only link between the defendant and the forum." *Id.*

Under Kim's ticketing theory of jurisdiction, she is the only link between the airlines and New Jersey. The only reason New Jersey is implicated in this case is that a New Jersey resident bought a ticket over the internet from her New Jersey home. But the airlines did not target New Jersey or even Kim. By purchasing a ticket from her home, Kim argues, she effectively pulled the airlines into New Jersey. That is insufficient, as "[d]ue process requires that a defendant be haled into court in a forum State based on *[its] own* affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (emphasis added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Thus, the only contact with New Jersey in this case is through Kim herself, and that is not enough.[2] There is no specific jurisdiction, then, over the airlines.

---

[2] In closely related contexts, courts have held that, when a plaintiff purchases a ticket online in Forum A, for travel or another activity that occurs in Forum B, and an injury occurs in Forum B, the ticket purchase does not create personal jurisdiction over the ticket issuer in Forum A. *E.g.*, *Kurzweil v. Amtrak*, Civ. No. 19-19388, 2020 WL 5760423, at *4 (D.N.J. Sept. 28, 2020) (no jurisdiction over Amtrak for accident in Washington, DC, even when tickets were purchased online in New Jersey); *Estate of Golembiewski v. Tuthill Corp.*, Civ. No. 19-18096, 2020 WL 3546676, at *4 (D.N.J. June 30, 2020) (no jurisdiction over Pennsylvania resort for accident there, even when tickets were purchased online in New Jersey); *Cardenas v. Am. Airlines, Inc.*, No. 17cv2513, 2018 WL 6503658, at *4 (S.D. Cal. Dec. 11, 2018) (no jurisdiction over airline for actions in Texas, even when ticket was purchased online in California); *Bomberger v. Am. Airlines, Inc.*, Civ. No. 17-5298, 2018 WL 3416386, at *2–3 (E.D. Pa. July 12, 2018) (no jurisdiction over airline for injury in North Carolina, even when ticket was purchased in Pennsylvania).

## C. Venue Transfer

If no personal jurisdiction is found in New Jersey, Kim asks that I transfer the case to the U.S. District Court for the Eastern District of New York. Title 28, United States Code, Section 1631, provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought."[3] Section 1631 thus requires deciding (1) whether the transferee court would have personal jurisdiction, and (2) whether a transfer is in the interests of justice. *D'Jamoos*, 566 F.3d at 107, 110.

### 1. Personal Jurisdiction in New York

To determine whether New York would have personal jurisdiction, I apply the law of the forum. *Id.* at 107 (applying Tenth Circuit and Colorado law to determine whether to transfer to Colorado). Kim need only make out a prima facie case for jurisdiction, a burden that is "light." *Id.* at 109–10 (citation omitted).[4] In the Second Circuit, plaintiffs "must [a] have a state-law statutory

---

[3]  Kim makes her transfer request pursuant to § 1406(a). (Kim Opp. at 2–3.) That provision allows a district court to transfer a case if it were filed in "the wrong . . . district" to "any district . . . in which it could have been brought" when transfer is "in the interest of justice." § 1406(a). The Third Circuit has previously suggested and recently confirmed that the relevant statute is not § 1406(a) but § 1631. *Chavez*, 836 F.3d at 224 (district court declined transfer under § 1406(a), and the Third Circuit explained that "the statutory provision applicable in these circumstances is arguably not 28 U.S.C. § 1406(a), but rather 28 U.S.C. § 1631"); *Danziger*, 948 F.3d at 132 (holding that "a district court that lacks personal jurisdiction must at least consider a transfer" and describing § 1631 as "[t]he relevant statute"); *see also, e.g.*, *Murray v. John Wood Cmty. Coll.*, Civ. No. 19-20920, 2020 WL 4670927, at *5 (D.N.J. Aug. 12, 2020) (applying § 1631 pursuant to *Chavez*). So I will apply § 1631. Ultimately, however, the distinction matters little, because, as the Third Circuit itself noted, the standards are similar. *Chavez*, 836 F.3d at 224.

[4]  I will only focus on whether there is specific jurisdiction over the airlines in New York because, as I previously concluded, general jurisdiction for Korean Air would lie in Korea and for Delta in Georgia or Delaware. Section III.A, *supra*. Although both airlines operate out of JFK, those contacts, while substantial, do not render them essentially at home in New York. *See Mali v. British Airways*, No. 17 Civ. 685, 2018 WL 3329858, at *5 (S.D.N.Y. July 6, 2018) (British airline not subject to general

basis for jurisdiction and [b] demonstrate that the exercise of personal jurisdiction comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).

### a. Statutory Basis for Jurisdiction

The New York statutory basis would seem to be § 302(a)(1) of New York's Civil Practice Law, which provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1); *see Mali v. British Airways*, No. 17 Civ. 685, 2018 WL 3329858, at *5 (S.D.N.Y. July 6, 2018) (applying § 302(a)(1) to a British airline). Section 302(a)(1) requires that "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (citation omitted).

On the first prong, Korean Air flies out of JFK, and Delta sells tickets for flights out of JFK, so they "transacted business within" New York. *See Mali*, 2018 WL 3329858, at *5 (assuming that British airline transacted business in New York by "targeting airports and travelers located in New York"). Additionally, Korean Air maintains a passenger service branch in New York. (DE 9-4 at 5.)

Next, "the 'arising from' prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 900 (N.Y. 2012)). The airlines' activities in

---

jurisdiction in New York). And while they may be registered in New York, corporations do not consent to general jurisdiction by such registration. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020).

New York—for example, flying out of JFK—are reasonably related to the claim that a tort occurred on one of those flights out of JFK. Given that the relatedness inquiry "is relatively permissive," *Licci*, 984 N.E.2d at 900; *see also Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010) (collecting cases where the Second Circuit has criticized district courts for construing the relatedness requirement too narrowly), and that due-process requirements are the same or more demanding, *see Eades*, 799 F.3d at 168, I will assume that the § 302(a)(1) requirements are met and move to the constitutional test.

### b. Constitutional Basis for Jurisdiction

The Second Circuit instructs that due-process analysis proceeds by determining "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted).

#### i. Minimum Contacts

On top of the Supreme Court's explanation of minimum contacts, *see Walden, supra*, the Second Circuit expounds that there must be "some *causal* relationship between an entity's in-forum contacts and the proceeding at issue." *In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019).[5] I discuss the

---

[5] Although the Supreme Court has stated that "the suit must arise out of or relate to the defendant's contacts with the forum," *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017) (quotation marks, alterations, and citation omitted), the Court has not explained exactly what "arise out of or relate to" means, *Valle Ruiz*, 939 F.3d at 530. In that vacuum, "[s]ome circuits require that the in-forum conduct to be the proximate cause of plaintiff's injuries, while others find the standard satisfied if the defendant's activities are the 'but for' cause of those injuries." *SPV Osus*, 882 F.3d at 344. Other courts do not require causation at all. *E.g., TV Azteca, S.A.B. de C.V. v. Ruiz*, 490 S.W.3d 29, 52–53 (Tex. 2016). The Second Circuit has not adopted a clear test, instead "requir[ing] some *causal* relationship." *Valle Ruiz*, 939 F.3d at 530. In light of these differences, the Supreme Court has taken up a case that may clarify the more precise standard. *See* Petition for a Writ of Certiorari at 2–4, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, No. 19-368 (U.S. Sept. 18, 2019).

I have applied both standards of causality and found that both have been satisfied. *See infra*.

11

causal relationship between the contacts and the claims first as to Korean Air, and then as to Delta.

**Korean Air:** There is at the very least a but-for causal connection between Korean Air's New York contacts and the claims here: If Korean Air did not operate KE086 flight out of JFK, then Kim could not have taken that flight and been injured while on board. At least one court, albeit outside the Second Circuit, has adopted reasoning along those lines.[6] In *Broadus v. Delta Air Lines, Inc.*, a plaintiff flew on a Delta flight out of Greensboro, North Carolina and was injured during a layover in Atlanta, Georgia. 101 F. Supp. 3d 554, 561 (M.D.N.C. 2015). The court held that there was specific jurisdiction in North Carolina because "[b]ut for Delta operating its airline business in North Carolina and picking up [plaintiff] in Greensboro, [plaintiff] would not have been injured during her layover in Atlanta." *Id.* Accordingly, there is recognition that a causal connection exists between the forum where a flight departs and an injury that occurs on that journey.

Drilling down to the specifics of this case, the relationship between JFK, Korean Air, and Kim's claims rises well above the but-for level. *See Walden*, 571 U.S. at 284. Consider first that any of the Korean Air attendants involved in preparing and serving food on the flight must have performed part of their job duties and boarded at JFK. It is also reasonable to conclude that, where the airline flies out of JFK regularly, such employees are either based locally or at least fly through there with some frequency. If those attendants are indeed based out of JFK, the connection between Korean Air employees' New York contacts and the claim is strong because the training and employment policies of JFK-based employees are highly relevant to a negligence claim. As these

---

[6]    There is little case law addressing whether there is personal jurisdiction over an airline in the state where a flight takes off or lands, when the suit alleges an injury on the flight. The explanation may be that airlines routinely submit to jurisdiction in those states without contest. *E.g.*, *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 140–41 (2d Cir. 1998) (injury aboard Delta flight from Tel Aviv to New York).

12

attendants are the relevant actors in this case, their employment base is significant.

Consider further that some acts related to Kim's claim likely occurred while at JFK. Common sense and experience inform that some food and service preparation must occur before a plane departs. The food at issue in this case would have had to come on board before departure, and the manner in which it was stored or prepared is likely to be relevant to its condition when it was later served during the flight. Put another way, decisions by attendants before departure could easily have affected how the food was later served or other incidents along that causal chain. Thus, it is hard to conclude that *all* relevant aspects of this claim occurred in-flight. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1782 (2017) (no specific jurisdiction when "all the conduct giving rise to the nonresidents' claims occurred elsewhere").

In response, Korean Air asserts that Kim's injury occurred somewhere in the air, outside New York, and that this fact is sufficient to defeat jurisdiction. (Korean Air Reply at 6.) That is incorrect. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. That the flight originated from JFK, that Kim placed herself in the custody of the airline there, and that Korean Air attendants must have done some preparation of the food at JFK, are meaningful connections to both New York and the claim. *See id.* at 283–84. There is thus specific jurisdiction over Korean Air in New York.

**Delta:** The analysis is a little different when it comes to Delta. No Delta employees seem to have been directly involved, as the flight was a Korean Air flight. But even if Delta did not operate the flight, Delta facilitated the flight from New York. By selling the ticket, Delta was in the business of providing Kim safe passage from New York to Seoul, albeit via its "partner," Korean Air. Delta did fail in that duty, Kim alleges, and she was injured as a result. So she

brings claims to recover for that injury. Delta may well deny responsibility for any injury—a factual defense on the merits. But as to a *claim* that Delta caused injury, there is a sufficient connection between Delta's contacts with New York (selling a ticket out of JFK) and the claim (an injury on that flight).

At least one court has found a ticket-selling airline subject to jurisdiction in the forum where an injurious flight originated, even if the airline did not itself operate the flight. In *Selke v. Germanwings GmbH*, passengers booked carriage on five flights, spread over a few days, through United's website: (1) a United flight from Dulles International Airport in Virginia to Germany, (2) a Lufthansa flight from Germany to Spain, (3) a Germanwings flight from Spain to Germany, (4) a Germanwings flight from Germany to the United Kingdom, and (5) a United flight from the United Kingdom to Dulles. 261 F. Supp. 3d 666, 669–70 (E.D. Va. 2017). The Germanwings flight between Spain and Germany crashed, and the passengers' families sued in Virginia. *Id.* The court concluded that "United's activities in Virginia proximately resulted in Plaintiffs' cause of action," reasoning as follows:

> [W]ere it not for United's role as intermediary and the contractual relationships United maintained with both Lufthansa and Germanwings, decedents would not have been able to book passage using the 'conjunction tickets' provided by United. Furthermore, the crash of [the Germanwings flight], while not the direct result of United's sale of the tickets that placed the decedents on that flight, was certainly the genesis of the dispute now before the Court.

*Id.* at 674.

Much of that reasoning applies here. "[W]ere it not for [Delta's] role as intermediary and the contractual relationships [Delta] maintained with [Korean Air]," Kim would not have been able to buy the tickets for flight KE086, on which she was injured. *Id.* Although her injury was not the "direct result" of Delta's ticket sale, it "was certainly the genesis of the dispute now before the Court." *Id.* At bottom, by selling tickets for flights out of JFK, Delta "purposefully availed itself of the privilege of doing business in [New York] and could foresee being haled into court there" for claims arising out of those

14

flights. *Charles Schwab*, 883 F.3d at 82. Whatever the exact contours of Delta and Korean Air's relationship, and whatever Delta's defenses may ultimately be, there is no way to reasonably disentangle Delta from the events here for jurisdictional purposes.

### ii. Reasonableness

"If minimum contacts exist, the defendant has to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Eades*, 799 F.3d at 169 (quoting *Licci*, 732 F.3d at 173). Such considerations include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant;
> 
> (2) the interests of the forum state in adjudicating the case;
> 
> (3) the plaintiff's interest in obtaining convenient and effective relief;
> 
> (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and
> 
> (5) the shared interest of the states in furthering substantive social policies.

*Id.* (formatting altered) (quoting *Chloé*, 616 F.3d at 164). The airlines have not made a compelling case that these considerations weigh in their favor.

First and foremost, they face a minimal burden in defending in New York. They both maintain a presence at JFK. Although Korean Air is foreign, it also maintains a passenger service branch in New York City. (DE 9-4 at 5.) What is more, both airlines—for years—have defended in New York actions arising from international flights. *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 220 (1996) (Korean defending claims arising from international crash in New York); *Wallace v. Korean Air*, 214 F.3d 293, 295 (2d Cir. 2000) (sexual assault aboard Korean flight from Seoul to Los Angeles); *Fishman by Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 140–41 (2d Cir. 1998) (injury aboard Delta flight from Tel Aviv to New York).

Second, New York has some interest in adjudicating the case, which may assist in defining the standard of care for airlines operating out of JFK.

Third, New York is convenient for Kim, as it neighbors her state of residence. Moreover, her request to transfer indicates that she consents to litigating in New York.

Fourth, the most efficient location for the litigation is probably New York because the employees who could be relevant witnesses are either based there or at least occasionally work there. There is no reason to believe that any such witnesses are in New Jersey.

And finally, because Korean Air does not fly out of New Jersey, any precedent in this case would not further New Jersey's substantive policies regarding airline regulation. Put differently, precedent would be more consequential in New York, where Korean Air operates. Because these factors all weigh against the airlines, jurisdiction in New York is reasonable.

* * *

For the reasons above, there is specific jurisdiction over the airlines in New York. This action "could have been brought" in EDNY.[7] 28 U.S.C. § 1631.

### 2. Interest of Justice

Having found that there is personal jurisdiction in New York, I must decide whether a transfer is in the interest of justice. *D'Jamoos*, 566 F.3d at 110. Determining where the interest of justice lies is left to the district court's

---

[7]   Some courts also consider, under the "could have been brought" inquiry, whether the transferee court would have subject-matter jurisdiction and whether venue would be proper there. *E.g.*, *Kurzweil*, 2020 WL 5760423, at *4.

There is subject-matter jurisdiction because the parties are completely diverse, and Kim's claim for damages may reasonably be read to exceed $75,000. (Notice at 2; Kim Opp. at 1.)

In the alternative, EDNY might also entertain this action based on federal-question jurisdiction because the Montreal Convention completely preempts state-law claims. Although I disagree with that view, *see DeJoseph*, 18 F. Supp. 3d at 604, there is substantial EDNY case law to that effect. *E.g.*, *Mughal v. Pakistan Int'l Airlines Corp.*, No. 14-CV-2505, 2018 WL 1135474, at *2 (E.D.N.Y. Fed. 28, 2018); *Mateo v. Jet Blue Airways Corp.*, 847 F. Supp. 2d 383, 387 (E.D.N.Y. 2012) (collecting cases).

Venue would be proper in the EDNY because the airlines are subject to personal jurisdiction there. *See* 28 U.S.C. § 1391(c)(3).

16

discretion. *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) ("Since the term 'interests of justice' is vague, district courts have a good deal of discretion in deciding whether to transfer a case.") (collecting cases from the Fourth, Eighth, and Ninth Circuits); *see also Roberts v. United States*, 710 F. App'x 512, 514 (3d Cir. 2017) (per curiam). When jurisdiction is clearly available in another court, as here, "[n]ormally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *SM Fin. Servs. Corp. v. Blue Cross Blue Shield of Tex.*, Civ. No. 19-17497, 2020 WL 7869213, at *2 (D.N.J. July 16, 2020) (alteration and citation omitted).

Transfer, as opposed to dismissal, also has the benefit of maintaining continuity and avoiding litigation over whether a refiled action is time-barred. *See Kurzweil v. Amtrak*, Civ. No. 19-19388, 2020 WL 5760423, at *4 (D.N.J. Sept. 28, 2020) ("[The interest of justice] requirement ordinarily will be satisfied if the statute of limitations has expired subsequent to the time of the original filing, so that transfer, rather than dismissal, will preserve the plaintiff's cause of action." (citation omitted)). Some courts, including some in EDNY, hold that the Montreal Convention has a two-year limitations period that "operates as a condition precedent to suit and, as such, is not subject to equitable tolling." *Narayanan v. British Airways*, 747 F.3d 1125, 1132 (9th Cir. 2014); *see also Chen v. China Airlines, Ltd.*, No. 19-cv-3957, 2020 WL 5503476, at *2 (E.D.N.Y. Sept. 11, 2020); *Mughal v. Pakistan Int'l Airlines Corp.*, No. 14-CV-2505, 2018 WL 1135474, at *3 (E.D.N.Y. Feb. 28, 2018). This is not to say that Kim's complaint, if refiled, certainly would be time-barred. But timeliness is at least an issue that could arise and needlessly take up courts' and the parties' resources. A transfer, which "will preserve the plaintiff's cause of action," *Kurzweil*, 2020 WL 5760423, at *4, avoids that problem. For those reasons, a transfer, rather than dismissal, is in the interest of justice.

## IV. CONCLUSION

For the reasons set forth above, the motions to dismiss are denied, and instead the case is transferred to the United States District Court for the Eastern District of New York.

A separate order will issue.

Dated: January 14, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**